**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

HERBERT LEE BURNETT                                                PLAINTIFF

v.                                     NO. 4:09CV00825 JMM/BD

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,                                    DEFENDANT

## RECOMMENDED DISPOSITION

I.      **Procedure for Filing Objections and Introduction**

        This recommended disposition has been submitted to United States District Judge

James M.  Moody.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal

basis for the objection.  If the objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection.  An original and one copy of your

objections must be received in the office of the United States District Court Clerk no later

than fourteen (14) days from the date of the Recommended Disposition.  A copy of

objections must be served on the opposing party.  Failure to file timely objections may

result in waiver of the right to appeal questions of fact.  The District Judge, even in the

absence of objections, may reject these proposed findings and recommendations in whole

or in part.

1

Mail objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

Plaintiff Herbert Lee Burnett brings this action for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act.

## II.    **Background**

Mr. Burnett protectively filed his applications for DIB and SSI on May 29, 2007. (Tr. 8, 117)  He alleges he became disabled on May 10, 2006, due to injuries to his back and neck suffered when he fell from the back of a flat-bed truck.  (Tr. 117, 121, 213)  At Mr. Burnett's request, an Administrative Law Judge ("ALJ")[1] held a hearing on September 29, 2008.  (Tr. 21-43)  On January 29, 2009, the ALJ issued a decision denying benefits.  (Tr. 8-15) Mr. Burnett requested review by the Appeals Council.  (Tr. 83-84)  The Appeals Council denied review.  (Tr. 1-3)  Accordingly, the decision of the ALJ is the final decision of the Commissioner, and this Court must determine "whether

---

[1] The Honorable Mark S. Anderson.

the record as a whole, including the new evidence, supports the ALJ's determination."
*Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000).

Mr. Burnett was fifty years old at the time of the hearing.  (Tr. 25)  He had
graduated from high school.  (Tr. 25)  He had past work experience as a material handler,
recreational center worker, and van driver.  (Tr. 40-41)  At the time of the hearing, he
lived with his wife and son.  (Tr. 38)

III.  **ALJ's Decision**:

The ALJ followed a five-step sequence to determine whether Mr. Burnett was
disabled during the relevant time period.  At step one, the ALJ found that Mr. Burnett had
not engaged in substantial gainful activity since May 10, 2006, his alleged onset date.
(Tr. 10)  At step two, he found that Mr. Burnett had degenerative disc disease, which was
a severe impairment.  (Tr. 10)  At step three, he found that Mr. Burnett did not have an
impairment or combination of impairments that met or equaled a Listing.  (Tr. 10-11)
The ALJ determined that Mr. Burnett had the residual functional capacity to perform a
full range of light work. (Tr. 11)  At step four, the ALJ found, based on the testimony of a
vocational expert ("VE"), that Mr. Burnett was unable to perform his past relevant work,
but that he could perform jobs that exist in significant numbers in the national economy.
(Tr. 14-15)  Accordingly, the ALJ found that Mr. Burnett was not under a disability, as
defined in the Act, from his alleged onset date through the date of his decision.  (Tr. 15)

Mr. Burnett claims the findings of the ALJ are not supported by substantial evidence. For the reasons set out below, the Commissioner's decision should be affirmed.

IV. **Discussion**:

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. 42 U.S.C. § 405(g). Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010) (citation omitted). In reviewing the record as a whole, a court may not reverse "merely because substantial evidence would support a contrary outcome." *Johnson v. Astrue*, __ F.3d __ , 2011 WL 31522, at *1 (8th Cir. 2011) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 877 (8th Cir. 2002)).

The ALJ must consider all the evidence in the record when determining residual functional capacity ("RFC"), including "the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) (quoting *Krogmeier*, 294 F.3d 1019, 1024 (8th Cir. 2002)). In the light of all the evidence, if "the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

Mr. Burnett's claim in this appeal is that the ALJ disregarded the opinions of the treating source doctors and improperly focused on the Plaintiff's return to work when determining RFC. (#7 at p. 9) The ALJ's RFC determination, however, is supported by substantial evidence.  The ALJ considered results of x-rays and a CT scan taken after the Plaintiff fell on May 10, 2006. These reports showed no fractures.  (Tr. 280-82)

Robert Richie, M.D., evaluated Mr. Burnett on May 15, 2006.  Plaintiff reported neck and back pain, and  Dr. Richie diagnosed neck pain, cervical paraspinal muscle spasm, and back pain without spasm.  (Tr. 165)  He prescribed Flexeril, Naprosyn, and physical therapy.  Dr. Richie found Mr. Burnett could return to work on "sedentary duty."  (Tr. 166)  Dr. Richie saw Mr. Burnett again on July 5, 2006.  (Tr. 159)  Dr. Richie observed that Mr. Burnett was probably "malingering" and questioned whether a metabolic defect was causing the generalized muscular weakness.  (Tr. 160)  Dr. Richie found that Mr. Burnett should return to work without restriction on July 6, 2006.  (Tr. 161, 163)

Mr. Burnett was evaluated by Steven L. Cathey, M.D., P.A., a neurosurgeon, on September 22, 2006.  Dr. Cathey noted that Mr. Burnett did "not put forth a particularly good effort with motor testing."  (Tr. 310)  He noted that the Plaintiff complained of low back pain with rotation of the shoulders and compression of the head, but stated these movements are "not typically painful even in acute situations and are often categorized as 'hysterical signs.'"  (Tr. 310)  Dr. Cathey did not recommend surgery for Mr. Burnett and thought that his injury should ultimately resolve with conservative treatment involving epidural steroids and pain management. (Tr. 310)

On March 2, 2007, Charles Davidson, M.Ed., performed a functional capacity evaluation of Plaintiff. (Tr. 315-329)  Mr. Davidson noted that Plaintiff "did not put forth consistent effort during his evaluation." (Tr. 315)  In spite of Mr. Burnett's lack of effort, Mr. Davidson concluded that the Plaintiff "demonstrated the ability to perform work at least at the Light classification as defined by the US Dept. of Labor. " (Tr. 316)

In addition to the medical evidence, the ALJ also considered Mr. Burnett's activities of daily living.  The record indicates he could drive, prepare meals, perform house work, pay bills, and attend church twice per week. (Tr. 128-135)  Additionally, Mr. Burnett was able to work part-time from September, 2007, through January, 2008, at the Jacksonville Recreation Center. From January through May 2008, he was able to work part-time driving a van transporting the elderly.  In  May, 2008, Mr. Burnett took a full-time job caring for the grounds, dumping trash cans, and picking up paper at the recreation center's parks. (Tr. 13-14, 28-30)

At the hearing, Mr. Burnett testified that his neck and back had improved; he had not seen a physician since December of 2007; and over-the-counter medication was enough to manage his pain. (Tr. 31)  The ALJ considered the entire record and there is substantial evidence to support his conclusion that Mr. Burnett has the residual functional capacity to perform a full range of light work.

In support of his appeal, Mr. Burnett points to the treatment records of William Rutledge, M.D.  Dr. Rutledge examined Plaintiff on May 30, 2006.  He reviewed Mr. Burnett's x-rays and diagnosed cervical strain, lumbar strain, and a possible herniated nucleus pulposus lumbar spine. (Tr. 169)  He prescribed Hydrocodone and Flexeril with physical therapy. (Tr. 169)  He wrote a note for Plaintiff checking a box indicating he had "Total Temporary Disability" and could not

6

work for six to eight weeks.  (Tr. 217)  Dr. Rutledge examined Plaintiff again on June 13, 2006.

He again prescribed physical therapy and the medications and encouraged Mr. Burnett to increase

stretching exercises and to walk at home.  (Tr. 171)  He again signed a note checking that Mr.

Burnett had "Total Temporary Disability," but he indicated that Mr. Burnett could possibly return

to work on July 6, 2006.  (Tr. 218)  Dr. Rutledge examined Mr. Burnett again on July 10, 2006,

and diagnosed him with "[c]ervical strain/sprain," "[l]umbar strain/sprain," and "degenerative

disc disease of the lumbar and cervical spine."  (Tr. 173)  He prescribed physical therapy, Lorcet,

ibuprofen, and Flexeril.  (Tr. 173)  Dr. Rutledge again wrote a note checking that Plaintiff had

"Total Temporary Disability" and excused him from work for three more weeks.  (Tr. 220-21)

Mr. Burnett claims that Dr. Rutledge, "clearly had him disabled from May 23, 2006 through at

least the end of July."  (#7 at p.8)

   Mr. Burnett also points to the treatment records of Scott Schlesinger, M.D., a

neurosurgeon who examined him on August 2, 2006, and advised him to remain off work from

July 10, 2006 through March 23, 2007.  After reviewing an MRI, Dr. Schlesinger diagnosed Mr.

Burnett with C5-6 disc herniation and C4-5 general canal stenosis and disc protrusion.  (Tr. 224)

On September 1, 2006, after reviewing results of Mr. Burnett's myelogram/CT scan, Dr.

Schlesinger recommended "anterior cervical decompression and fusion surgery of C4-5 and C5-

6."  (Tr. 237)   After reading Dr. Cathey's report and examining Mr. Burnett on November 6,

2006, however, Dr. Schlesinger stated that he agreed with Dr. Cathey that "there is no surgery

that is going to help him with the diffuse pains that he has" but recommended surgery because of

his "symptoms of cervical cord compression."  (Tr. 241)  Dr. Schlesinger stated he also agreed

with Dr. Cathey that "the neck and back pain itself I feel should be treated conservatively," but

he asked Mr. Burnett to think about whether he has "symptoms involving his extremities particularly the right upper extremity, of pain, numbness, tingling, clumsiness, etc. and desires to have surgery to see if this helps with those symptoms."  (Tr. 242)  Dr. Schlesinger scheduled Mr. Burnett for several epidural steroid injections and surgery on April 5, 2007, but it does not appear from the record that he ever had the surgery.  (Tr. 248)

Plaintiff also had a consultative examination with Reza Shahim, M.D., a neurosurgeon, on May 3, 2007.  Dr. Shahim diagnosed Plaintiff with spinal stenosis at C4-5 and disc herniation at C5-6.  Dr. Shahim stated he thought it was "reasonable" for Mr. Burnett to undergo an anterior fusion at C4-5 and C5-6, but stated "surgery may not eliminate all of his symptoms."  (Tr. 250)

Mr. Burnett saw Dr. Shahim again on December 13, 2007.  In notes from the visit, Dr. Shahim stated he was "supportive of his disability" but went on to state that "[b]ased on his Functional Capacity Test which was done in March 2007," Plaintiff "has the ability to perform work at light duty classification."  (Tr. 265)

Mr. Burnett argues that these medical records establish that he "could not work from May 2006 until at least December 2007."  (#7 at p.8)   For several reasons, however, the records on which the Plaintiff relies are not entitled to controlling weight.  For example, Dr. Shahim contradicted his opinion supporting Mr. Burnett's claim for disability by noting that the functional capacity test indicated Mr. Burnett could perform light work.  See *Goff v. Barnhart*, 421 F.3d at 790 (an ALJ may disregard a treating physician's opinion where the treating physician renders inconsistent opinions that undermine the credibility of his opinions).  Further, Dr. Rutledge's opinion is contradicted by Dr. Richie; and Dr. Schlesinger's and Dr. Shahim's opinions were somewhat inconsistent with Dr. Cathey's opinion and with Mr. Burnett's activities

8

of daily living.  Treating source opinions are not entitled to controlling weight when they are contradicted by other substantial evidence in the record.  See *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004).

Finally, Plaintiff gives great weight to some of his treating physicians labeling him as "disabled" or "unable to work."  Reliance on these opinions to meet his burden of establishing disability is misguided.  The issue of whether an applicant is disabled or unable to work is one reserved for the Commissioner and is not the type of opinion that is entitled to controlling weight.  See *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (the ultimate conclusion of whether plaintiff could sustain gainful employment is a question for the Commissioner) (citing 20 C.F.R. § 404.1527(e)(1)); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005); *Stormo*, 377 F.3d at 806.

## V.    **Conclusion**

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is ample evidence on the record as a whole to support the Commissioner's decision.  Accordingly, the Court recommends that the District Court affirm the Commissioner's decision and dismiss Plaintiff's complaint with prejudice.

DATED this 17th day of February, 2011.

_____
UNITED STATES MAGISTRATE JUDGE